# Mack's Estate.

*Decedents' estates—Claim by daughter for nursing—Family re-lation—Evidence—Periodical payments—Competency of witness—Party dead.*

1. Services rendered by a child to a parent are presumably gratuitous, and no payment therefor can be demanded, unless a contract to so reward has been proven by clear, distinct and positive evidence.

2. A claim by a daughter against her deceased father's estate for services as nurse and housekeeper for a period of six years, at the rate of twenty-five dollars per week will be sustained, where it appears from competent and sufficient evidence that the claimant was a trained nurse, that at her father's request she returned to her home under the express promise, on his part, to pay her a sum equal to that paid a skilled nurse, if she would take care of the home, her father, and the minor children living therein.

3. In such case, the presumption that payment had been made at stated periods, is rebutted, where witnesses resident in the family testify that no payments had been made, and the claimant herself so testifies, when, after examination in chief, she was called in cross-examination to explain certain payments made to her by checks from her father, which were matters not referred to in her testimony in chief, her evidence being thus made competent.

Argued October 2, 1923. Appeal, No. 79, Oct. T., 1923, by Anna E. Mack, widow and residuary legatee, from decree of O. C. Beaver Co., June T., 1922, No. 4, dismissing exceptions to auditor's report, in estate of John Mack, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to report of Henry Calhoon, Esq., auditor. Before BALDWIN, P. J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Anna E. Mack, widow and residuary legatee, appealed.

1924.]     Assignment of Error—Opinion of the Court.

*Error assigned* was, inter alia, decree, quoting it.

*Homer H. Swaney,* of *Martin & Swaney,* with him *Frank H. Laird,* for appellant, cited: Caldwell v. Taylor, 276 Pa. 398; Mosteller's App., 30 Pa. 473; Ulrich v. Arnold, 120 Pa. 170; Zimmerman v. Zimmerman, 129 Pa. 229; Dettenmaier's App., 13 Pa. Superior Ct. 170.

*A. P. Marshall,* for appellee, cited: Steel v. Steel, 12 Pa. 64; Munhall's Est., 60 P. L. J. 45; Miller's App., 100 Pa. 568; Harrington v. Hickman, 148 Pa. 401; Comly's App., 185 Pa. 208; Furbush's Est., 220 Pa. 166; Barnes' Est., 221 Pa. 399.

OPINION BY MR. JUSTICE SADLER, January 7, 1924:

Jacob Mack died testate in 1921, and by his will made specific bequests in equal amounts to his five children, the mother of whom had lived until 1914. The rest and residue of his estate was given to his second wife, married in 1920, who survived. One daughter, Julia (subsequently married after the decease of her father), in 1912 attended a hospital, and was there trained as a skilled nurse. Upon request, she returned to the home, taking charge of the house and family,—several of the brothers and sisters were minors,—and resided there until her father's death. A claim on her behalf for services rendered was presented to the executor, it being insisted that they were performed as a result of a contract, by the terms of which the father agreed to pay her, while so engaged, the same sum she would have received if her profession as trained nurse had been followed. A demand for this amount, covering six and one-half years,— reduced by the auditor to six,—was presented and allowed, at the rate of twenty-five dollars per week, and subsequently approved by the orphans' court. The salary fixed was the minimum sum named by the witnesses as fair compensation for a trained nurse during the period covered by the claim.

The sufficiency of the evidence produced to sustain this award is attacked by the residuary legatee, it being argued that there is no proper proof of an express contract, or of the nonpayment of the sum claimed, even if an agreement to recompense was shown. We approach the question involved, having in mind the long established principle that the services rendered by the child to the parent are presumably gratuitous, and no payment therefor can be demanded unless a contract to so reward has been proven by clear, distinct and positive evidence (Caldwell v. Taylor, 276 Pa. 398; Brown v. McCurdy, 278 Pa. 19), and mere loose declarations expressing gratitude for labor performed, indicating the wish that recompense be given, are not sufficient upon which to base an adverse recovery: Ulrich v. Arnold, 120 Pa. 170; Zimmerman v. Zimmerman, 129 Pa. 229. On the other hand, if there is proven a specific and definite contract by the parent fixing the character of service and determining the fact that compensation was contemplated, supplemented by proof that the service intended was rendered, an award will be sustained: Harper's Estate, 196 Pa. 137. The auditor, as well as the court on exceptions filed, found as a fact the existence of the understanding and the promise to pay, and determined the charges made properly measured the value. The conclusions thus reached are entitled to weight, if supported by the evidence of record: Barnes's Est., 221 Pa. 399.

It is necessary to consider whether the testimony here offered justified the findings made. The daughter, Julia, had been a student in a hospital, preparing herself as a professional nurse, and was so engaged for two and one half years prior to the death of her mother. She abandoned this vocation at the request of her father, under an alleged promise of payment of a sum equal that paid a skilled nurse, if she would return to the family home and take care of it, her father, and the minor children living therein. That she was competent to perform the work for which she had been trained, and was frequently re-

quested to assist others professionally while with her father, appears by the testimony of several disinterested witnesses. Such services were in demand during the period covered by the present claim at a minimum rate of twenty-five dollars per week, a higher sum being named by several. Sister Seton and Doctor Jackson both testified as to endeavoring to secure the aid of Julia as a trained nurse, and of being told by the decedent that he would not permit her to undertake any outside work since "he would pay her as much or more than she could earn, and under no circumstances would he permit her to go," and that "she should remain at home and he would pay her the equal to what she would receive nursing."

Other witnesses were called who told of statements made by the father, disclosing the existence of an understanding on his part to pay at the rate which could have been earned by the daughter had she followed her profession. These declarations were made on numerous occasions in the presence of the various members of the family, including the claimant. Frank Mack and Fred P. Mack, her brothers, Sarah Hicks, a sister, and Mrs. Barbara Hicks, apparently a disinterested third party, all testified as to the promise made by the decedent, and no opposing evidence was offered on behalf of the residuary legatee. After a careful reading of the record, we are convinced that the claimant met the quantum of proof required in such cases; that she did perform the services at the request of her father, under an express promise to pay therefor the sum customarily paid for a trained nurse in the community, and that this amount was not less than twenty-five dollars per week. The auditor, as found by the court below, correctly so held.

One other objection is made to the award in the present case. Where labor of a domestic character or nursing has been rendered, there is a presumption that payment for it was given at stated periods (Galbraith's Est., 270 Pa. 288; Cummiskey's Est., 224 Pa. 509;

Flaccus v. Wood, 260 Pa. 161),—a rule not applying to services of a different kind: Gibb's Est., 266 Pa. 485. Here the claimant came within the class to which the presumption is applicable, and the burden was upon her to overcome the legal conclusion which follows. It was for the court to say, under the circumstances, whether this had been done: Richards v. Walp, 221 Pa. 412. Sarah Hicks, a daughter, residing in the same house, testified positively that no payment on behalf of the services was ever made by the decedent, and, though appellant reserved the right to cross-examine, counsel failed to take advantage of the opportunity to do so. Further questioning might have weakened the strength of this statement, as was true of the testimony of Frank Mack, but no effort was made to show that compensation could have been given without the knowledge of the witness. It is also to be noticed that in the evidence of all who repeated declarations of the decedent, the time of payment is indicated as in the future and not the present.

In considering the proof of the contract, no weight has been given to the statements of Julia herself. She was called to show the family relationship, and was asked one question, as to her reason for returning home, in response to which she replied it was at the instance of her father. No objection was made to this query, though subsequently, when a similar remark was forthcoming, counsel asked that the answer be stricken out. No ruling appears and the line of examination was abandoned. Of course, she could not have testified to facts occurring prior to the death of her father, tending to establish her claim, and had there been an investigation along this line by her counsel, then cross-examination as to the matters developed would not have prejudiced those objecting to the claim, and made her competent, on reëxamination, to testify generally as to facts occurring during the lifetime: Goehring's Est., 263 Pa. 47; De Silver's Est., 32 Pa. Superior Ct. 174. Here, a different situation is presented. The witness

was called later for cross-examination, and asked in detail as to whether any payments had been received from her father during his lifetime,—a matter not referred to in chief. Several checks were shown, and the witness requested to explain the purpose for which they were given. She was then asked by her counsel: "Did your father ever pay you anything on account of your wages," and the answer was: "No." At a later hearing, she was questioned as to the contract with her father, but this testimony we disregard. It is contended, however, that the statement as to nonpayment, made possible by the examination of appellant, and not in response to matters referred to in chief, should be considered with the other evidence in determining whether or not the presumption of periodic payments has been overcome.

Undoubtedly, the surviving party is made competent where called to testify only as to matters occurring since death, and is then cross-examined as to all relevant facts happening prior thereto: Hambleton's Est., 166 Pa. 500; Clad's Est., 214 Pa. 141. If the statement as to nonpayment had been elicited by the examination in chief, then the further queries, by the counsel opposing, to elucidate what had been said, would not have qualified the claimant to so testify. Here, however, the proof was developed by the cross-examination in an attempt to show that certain payments were made by check, and was not in response to anything theretofore suggested. To this she had the right to answer, and her testimony to that extent was competent: Shadle's Est. (No. 1), 30 Pa. Superior Ct. 151. Considering it or not, there is sufficient in this case to justify a finding that the claim was not paid.

Upon a careful examination and consideration of the entire record, we are satisfied that the conclusion reached by the auditor, and affirmed by the court below, is correct; the assignments of error are therefore overruled, and the decree of the court below is affirmed; the costs to be paid by the appellant.