Gallagher, Admr., Appellant, *v.* Rogan.

Argued April 18, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John J. Gallagher,* with him *Frank J. Bradley* and *Vincent A. Carroll,* for appellant.

*Julian W. Barnard,* with him *Benjamin Ludlow,* for appellee.

OPINION BY MR. JUSTICE DREW, May 9, 1938:

Within the week preceding her death, Mary Dolan transferred substantially all of her property to defendant, her niece. The administrator of her estate subsequently instituted the present suit in equity to compel reconveyance to the estate. The chancellor denied the relief sought and dismissed the bill. This appeal followed.

The facts and circumstances of the transfer are not disputed. Mary Dolan was seventy years of age when she died on September 19, 1935, following an unsuccessful surgical operation. Arrangements for the operation were made on September 10. On September 12 she wrote to ask defendant to visit her on the following Sunday, September 15. On September 13 she called on her real estate broker and instructed him to prepare an assignment to defendant of a mortgage she owned. The assignment was executed by her on September 14. On the same day she called on the assistant treasurer of her bank to inquire whether she might have her securities transferred at the bank; she was told the transfer would be taken care of. On the following day, September 15, defendant, pursuant to the above request, visited her aunt who then delivered to her the assignment of the mortgage and the fire and title insurance policies, and instructed her to notify the mortgagor of the transfer so that she would receive the subsequent interest payments when due. Decedent likewise requested defendant to meet her the following day, September 16, at her bank. At this meeting she instructed the assistant treasurer to transfer her savings account to a new account to be opened in the name of defendant.

The transfer was made and decedent signed a receipt closing her account. At the same time she delivered to the assistant treasurer a number of securities and instructed him to make them over to defendant. A number of them had already been indorsed by decedent, and she then indorsed the remainder. Being told to fill in defendant's name on the assignments already indorsed on the securities, decedent replied that defendant could insert her own name. This she did in the presence and at the instruction of the assistant treasurer. The certificates were thereupon sent to a broker to be transferred to defendant, decedent taking a receipt which she gave to defendant who later returned it upon receiving the new certificates.

The only question in the case is whether the transactions set out above constituted a valid gift of decedent's mortgage, bank account and securities. We fully agree with the chancellor that the transfers were valid. What more decedent could have done to divest herself of this property is difficult to conceive. Everything was done in strict legal form in the presence and with the aid of disinterested third parties. Decedent's every act was the result of her own mature deliberation, uninfluenced by any solicitation or urgence on defendant's part. Although defendant was in the bank when the securities and savings account were transferred, she was not even present with the decedent and the assistant treasurer while they were arranging the transaction until the latter called her in to write her name in the assignment of the certificates. Moreover, the mortgage assignment was executed before she met decedent on September 15. Decedent knew in advance that the operation she had planned was serious and might be fatal, a fact which made her act the more calculated and definitive. Appellant disclaims any suggestion that she was not in full possession of her faculties. Indeed, the caution and care with which she carried out her last transactions were but exemplary of the business acumen she seems to

have possessed throughout her life. From the receipts of her boarding house she had accumulated a substantial estate. She had numerous active investments, recommended investments for her friends, and had made some for this defendant. She was the dominant personality in the present transactions, which, moreover, she took a full week to consider and arrange.

It is true that she was survived by her husband, seventy-nine years of age, by a sister and by nieces and nephews in addition to defendant, which makes her disposition seem harsh and inequitable. Nevertheless, she actually thought of these persons when she gave her property away. It was testified by a disinterested witness that she said her husband would have the house, which they held by the entireties, and that her reason for favoring defendant was because she was a widow with four children while all her other nieces were married. Moreover, it appears that defendant had been her favorite for thirty years. At any rate, as well said by the court below, "Whatever may have been her reason, it is clear that she knew exactly what she was doing, and fully intended to do what she did." There is not a scintilla of evidence of fraud, nor even a circumstance of suspicion.

Appellant claims that such a confidential relation existed between decedent and defendant that the defendant should have the burden of proving the gift valid. Without determining whether such be the case, we need only say that enough has been shown to sustain the transactions even under the most rigid requirements of proof. Appellant complains also of the exclusion of the testimony of certain of decedent's relatives on the ground of incompetency under the Evidence Act of May 23, 1887, P. L. 158, section 5(e) which provides, "Nor, where any party to a thing or contract in action is dead . . . shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased . . ., be a

competent witness to any matter occurring before the death of said party. . . ." We think the witnesses were incompetent. Their interest is adverse to the right of decedent. It was decedent's right to transfer her property voluntarily to defendant. This she has done by transfers that are complete and prima facie regular in every respect. When such is the case we have held consistently that the interest of one who would take a share of the property should its transfer be set aside makes him incompetent to testify: *King v. Lemmer*, 315 Pa. 254; *Fiscus v. Fiscus*, 272 Pa. 326; *Campbell v. Brown*, 183 Pa. 112; *Crothers v. Crothers*, 149 Pa. 201; see *King v. Humphreys*, 138 Pa. 310. It is true that had the transfers been secured by fraud or undue influence it would have been decedent's right to have them voided. But in ruling on the competency of witnesses we look at the transaction prima facie: *King v. Lemmer*, supra; *Crothers v. Crothers*, supra. If found regular when so examined it is decedent's right to have it stand, and interested witnesses are incompetent to attack it.

It is unnecessary to decide whether defendant was a competent witness. She was made such by being called by plaintiff for cross-examination, when she was asked if she had paid anything for the securities she received. This introduced a pertinent material matter happening in decedent's lifetime, and opened the door to defendant for a full explanation. In a somewhat similar situation, in *Shadle's Estate*, 30 Pa. Superior Ct. 151, 155, President Judge RICE said: "His cross-examination as to these matters was not very extended nor very important, it is true, but under all the authorities he thereby became a fully competent witness as to other relevant matters, whether occurring before or after the death of the decedent: *Corson's Estate*, 137 Pa. 160; *Boyd v. Conshohocken Worsted Mills*, 149 Pa. 363; *Hambleton's Est.*, 166 Pa. 500; *Danley v. Danley*, 179 Pa. 170; *Watkins v. Hughes*, 206 Pa. 526; *Mothes's Est.*, 29 Pa. Superior Ct. 462." The 6th section of the Evidence Act

of 1887, supra, contains the following language: "Any person, who is incompetent under clause (e) of section five by reason of interest, may nevertheless be called to testify against his interest, and, in that event he shall become a fully competent witness for either party; . . ." To the same effect see *Hughes's Estate*, 319 Pa. 321; *Mack's Estate*, 278 Pa. 426, and *Lentz's Estate*, 261 Pa. 530.

But even if all of plaintiff's witnesses were competent, and if the defendant were incompetent, the findings of the chancellor must have been the same. The ruling was not made until after all the testimony of plaintiff's witnesses was heard. This testimony is printed in the record. Considered as properly admitted, it contains nothing whatever to change our conclusion that the gift was valid. To the contention that defendant's testimony was improperly admitted we make the same answer. Her testimony in support of the action of decedent added nothing material to her case, already amply proved by the testimony of decedent's real estate broker, of the assistant treasurer of her bank, and of other persons in no way interested in the outcome of this litigation.

There are numerous other assignments of error. None of them has sufficient merit to require discussion. All assignments are overruled.

Decree affirmed at appellant's cost.